**Michael J. HALEY, Petitioner,**

v.

**DEPARTMENT OF the TREASURY, Respondent.**

**No. 92–3077.**

United States Court of Appeals, Federal Circuit.

Oct. 13, 1992.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Dec. 2, 1992.

Samuel H. Liberman, Clayton, Mo., argued for petitioner.

Allen D. Bruns, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief was Theodore Dreyer, Attorney, Office of Thrift Supervision, Dept. of The Treasury, of counsel.

Before LOURIE, Circuit Judge, RADER, Circuit Judge, and MILLS, District Judge.[*]

RICHARD MILLS, District Judge.

We deal here with the disclosure of confidential information.

Consequently, there was a Stipulated Protective Order, and the oral arguments before this court were closed to the public.

## I. *Procedural History*

Petitioner Michael J. Haley petitions for judicial review of the June 4, 1991 decision of the Administrative Judge (AJ), Docket No. SL122191W0098, dismissing the petitioner's claim for corrective action under 5 U.S.C. § 1221 (Supp. II 1990) and determining that it was without jurisdiction to enter-tain his appeal under 5 U.S.C. § 7701(a) (1988). The petitioner was removed from his position as a Senior Examiner with the Office of Thrift Supervision, Department of the Treasury (the "Agency" or "OTS"), for violating standards of conduct regarding the release of confidential information to unauthorized individuals. The AJ's decision became the final decision of the Merit Systems Protection Board when the Board denied review on October 22, 1991.

## II. *Factual Background*

Petitioner began his federal service in 1977 as an Examiner with the Federal Home Loan Bank Board (the "FHLBB") and during his tenure with the FHLBB was in the competitive service. When the FHLBB became an independent government corporation in 1985, Petitioner consequently lost his status as a federal employee. Pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), the FHLBB was abolished and on October 8, 1989, Petitioner became an employee of the Agency.

While employed as a Senior Examiner with the Agency, Petitioner became familiar with the fiscal condition of the Marion County Mutual Loan and Building Association ("MCM"), a savings and loan association in Hannibal, Missouri. Because MCM did not meet the stringent capital requirements imposed pursuant to FIRREA, it was required to submit to the Agency a capital plan (the "Plan") demonstrating that the capital requirements would be met within a reasonable period of time.

MCM submitted its Plan to the Agency in early 1990 explaining that "[t]he primary feature of the Plan will be to complete a conventional conversion to stock form by December 31, 1990, with a simultaneous conversion of net worth certificates and/or accrued interest payable to GAAP [generally accepted accounting procedures] equity...." MCM's Plan was subsequently rejected by the Agency.

---

[*] Honorable Richard Mills, U.S. District Judge for the Central District of Illinois, sitting by desig-nation.

On April 30, 1990, in conjunction with the denial of the Plan, MCM was asked by the Agency to sign a Consent Agreement. When executed by both parties, the Consent Agreement would: (1) place restrictions on the operation of MCM; (2) provide for the appointment of a conservator or receiver; (3) authorize the Agency to negotiate a plan of merger, consolidation, or reorganization; and (4) allow for changes in the management of MCM.

On July 3, 1990, Petitioner prepared a memorandum addressed to Robert A. Maffitt, Director of Field Operations for the Agency, criticizing the supervisory officials of the Agency for failing to approve MCM's Plan. This memorandum contained the Agency's confidential financial information about the failing savings and loan institution, the potential removal of MCM's Board of Directors and management, and the possible merger of MCM with another institution. Petitioner sent a copy of the memorandum to Bayard Plowman, Managing Officer of MCM, encouraging Plowman to forward copies of the memorandum to his Congressman and to the head of the House of Representatives Banking Committee.

On July 26, 1990, due to his distribution of confidential information to unauthorized personnel in the aforementioned memorandum, Petitioner was removed from his position with the Agency.

### III. *Standard of Review*

The standard of review for this court in considering the Board's decision is limited. "The agency action must be sustained unless it is found to be: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedure required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence...." *Warren v. Dep't of the Army*, 804 F.2d 654, 655–66 (Fed.Cir.1986).

We note as an initial premise that this court's proper role is not to conduct a *de novo* review of the findings reached by the Board. Instead, this court must determine whether the Board's decision is supported by substantial evidence. In addition, while the Petitioner offers a multitude of arguments in support of his position that the Board erred in reaching its conclusions, this court will address only those which it feels have sufficient merit to warrant consideration.

### IV. *Analysis*

#### A. *The Board's Jurisdictional Authority to Entertain Petitioner's Due Process Claim*

Petitioner first contests the Board's determination that it lacked jurisdiction to entertain his claim: that the Agency failed to give him any procedural safeguards when effecting his removal. He argues that because he was in the competitive service until 1985 (the date on which the FHLBB became an independent government corporation) when he became employed by the Agency in 1989 he reentered as a federal employee and was therefore entitled to return to a position in the competitive service. Petitioner contends that the Agency had no right to reinstate him as an excepted employee because pursuant to 5 C.F.R. § 6.1(a) the Agency could not show that his position as an Examiner should have been one excepted from the competitive service.

The Board rejected Petitioner's argument concluding that "OTS appointed the appellant to the excepted service as authorized by OPM [the Office of Personnel Management] [("OPM")]. Therefore ... he is not entitled to appeal to the Board under 5 U.S.C. § 7511(a)(1)(A)(i)."

Pursuant to 5 U.S.C. § 7511(a)(1) (Supp. II 1990), an employee who is entitled to appeal to the Board is defined as:

(A) an individual in the competitive service—

(i) who is not serving a probationary or trial period under an initial appointment; or

(ii) who has completed 1 year of current continuous service under other than a temporary appointment limited to 1 year or less;

(B) a preference eligible in the excepted service who has completed 1 year of current continuous service in the same or similar positions—

    (i) in an Executive agency; or

    (ii) in the United States Postal Service or Postal Rate Commission; and

(C) an individual in the excepted service (other than a preference eligible)—

    (i) who is not serving a probationary or trial period under an initial appointment pending conversion to the competitive service; or

    (ii) who has completed 2 years of current continuous service in the same or similar positions in an Executive agency under other than a temporary appointment limited to 2 years or less;....

As properly established by the Board, "[t]he agency's proof demonstrated that the Office of Personnel Management (OPM) placed all positions of OTS involved in the supervision of savings associations in the excepted service under schedule A as required by Civil Service Rule VI." Pursuant to 5 C.F.R. § 6.1(b) (1992) "OPM shall decide whether the duties of any particular position are such that it may be filled as an excepted position under the appropriate schedule." Here, the Agency appointed Petitioner to a position in the excepted service as authorized by OPM. Petitioner fails to cite any persuasive authority in support of his position that he was entitled to appeal his removal to the Board as an "employee" under 5 U.S.C. § 7511(a)(1)(A). Moreover, because petitioner was removed from his position effective July 26, 1990, he is not entitled to appeal under section 7511(a)(1)(C). 5 U.S.C. § 7511 note (Supp. II 1990) (provision only applies to personnel actions taking effect on or after August 17, 1990). Accordingly, the Court rejects his position and affirms the decision of the Board.

### B. *The Protection Afforded Petitioner By 5 U.S.C. § 2302(b)(8)*

■ Petitioner next contends that the Board erred in concluding that his disclosure of confidential information to the management of MCM was not protected pursuant to 5 U.S.C. § 2302(b)(8) (the "Whistleblower Protection Act").

Before the Board, Petitioner argued that his dismissal by the Agency violated the Whistleblower Protection Act as his disclosures fell within the ambit of the act. In considering his claim, the Board, *inter alia*, concluded that when he made the disclosure Petitioner did not have the requisite reasonable belief that the activities of his superiors involving the rejection of MCM's Plan violated FIRREA or the regulations implementing the statute. Absent that reasonable belief, the Board found that Petitioner had failed to present a *prima facie* case of reprisal for whistleblowing, *Gergick v. General Servs. Admin.*, 43 M.S.P.R. 651, 659 (1990), and accordingly rejected his argument. When considering Petitioner's claim, the Board first examined the nature and content of his disclosure. The Board concluded that "[a] thorough review of the appellant's disclosure demonstrates that he was actually expressing his disagreement with the rejection of the capital plan. This rejection prompted OTS's request for MCM to sign a consent agreement which could result in the removal of the Board of Directors and managing officers at MCM." Concluding that Petitioner's disclosure was not protected, the Board stated "that it was not reasonable for the appellant, an experienced examiner of savings associations, to believe that OTS's rejection of MCM's capital plan was a violation of FIRREA or the regulations implementing the statute." Pursuant to 5 U.S.C. § 2302(b)(8) (Supp. II 1990), any employee who has the authority to take or direct others to take, recommend or approve any personnel action shall not with respect to such authority:

(8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or application for employment because of—

    (A) any disclosure of information by an employee or applicant which the employee or applicant *reasonably believes* evidences—

(i) a violation of any law, rule, or regulation, or

(ii) gross management, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety,

if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs;.... [Emphasis ours.]

As noted above, the Board concluded that given Petitioner's extensive experience as an examiner of savings associations, he did not have a reasonable belief that OTS's rejection of MCM's capital plan constituted a violation of FIRREA or the regulations implementing the statute. This court agrees.

12 U.S.C. § 1464(s)(4)(A) (Supp. II 1990) provides:

In addition to any other action authorized by law, including paragraph (3), the Director may issue a directive requiring any savings association which fails to maintain capital at or above the minimum level required by the Director to submit and adhere to a plan for increasing capital *which is acceptable to the Director.* [Emphasis ours.]

In addition, 12 U.S.C. § 1464(t)(6)(A)(ii) (Supp. II 1990) provides that the Director can require any savings association in noncompliance with capital standards to submit a plan that: (1) addresses the savings association's need for increased capital; (2) describes the manner in which the savings association will increase its capital; (3) specifies the types and levels of activities in which the savings association will engage; (4) requires any increase in assets to be accompanied by an increase in tangible capital not less in percentage amount than the leverage limit then applicable; (5) requires any increase in assets to be accompanied by an increase in capital not less in percentage amount than required under the risk-based capital standard then applicable; and (6) *is acceptable to the director.* (Emphasis ours.)

The Agency periodically issued guidelines for FIRREA capital plans, exemptions, and exceptions in documents entitled Thrift Bulletins ("TBs"). TB 36, the TB in effect at the time MCM submitted its capital plan provides in relevant part that "FIRREA requires that a savings association that fails any one of the capital standards shall submit a capital plan and may apply for a limited capital exception, an exemption from a supervisory sanction or restriction, or a limited growth exception."

As concluded by the Board, "[t]he statute is specific that the required capital plan for increasing capital must be acceptable to the Director. There is no standard under FIRREA requiring approval of a capital plan for an association which fails to comply with capital standards." The Board continued:

Based on this authority indicated in the statute, I do not find that the appellant, an Examiner with OTS for approximately nine months when he made his disclosure (but an Examiner for 13 years in total), reasonably believed that OTS' action rejecting MCM's capital plan was a violation of the FIRREA statute.

The court concurs with the Board's evaluation of the relevant statutory authority and with its conclusion that Petitioner did not have an objective belief that OTS' denial of MCM's capital plan constituted a violation of law or regulation. The relevant statutes clearly granted broad discretion in the evaluation of any capital plan submitted by MCM. Petitioner's experience as an Examiner and the clear language of the relevant authorities make Petitioner's claim untenable.

## C. *Petitioner's Disclosure to Congress*

5 U.S.C. § 2302(b) Supp. II 1990) states that "This subsection shall not be construed to authorize the withholding of information from the Congress or the taking of any personnel action against an employee who discloses information to the Congress." Petitioner argues that because his dissemination of confidential information to the management of MCM included a suggestion to share the information with

members of Congress, that his disclosure is protected by § 2302(b). The Board rejected Petitioner's argument as does this court.

As noted by the Board, the Petitioner testified that he neither shared his letter with any member of Congress nor believed that the management of MCM would follow his suggestion to do so. Moreover, it is undisputed that the Agency dismissed the Petitioner not for disclosing information to a member of Congress but instead for disclosing information to the officer of a savings and loan association under its supervision. This court concurs with the Board that 5 U.S.C. § 2302(b) offers no relief to the Petitioner.

### D. *Disqualification of Administrative Judge*

Petitioner argues that the AJ demonstrated that he had reached a conclusion on the merits of Petitioner's claims prior to the presentation of evidence by the parties as evidenced by his denial of Petitioner's motion for a stay of his removal in an order issued on January 15, 1991. Petitioner's subsequent motion for the AJ to disqualify himself was denied. This court affirms the AJ's decision.

"There is a strong presumption in the law that administrative actions are correct and taken in good faith." *Sanders v. United States Postal Serv.*, 801 F.2d 1328, 1331 (Fed.Cir.1986). More specifically, "[i]t is well established that there is a presumption that public officers perform their duties correctly, fairly, in good faith, and in accordance with law and governing regulations and the burden is on the plaintiff to prove otherwise." *Parsons v. United States*, 670 F.2d 164, 166 (Ct.Cl.1982) (citing *United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926)).

Here, the AJ was required to make a finding as to whether there was a substantial likelihood that Petitioner would prevail on the merits. That finding necessitated his examination of the facts surrounding Petitioner's discharge and the formation of an initial impression of Petitioner's contentions. Petitioner has failed to demonstrate that the AJ's subsequent thorough and complete review of the facts and law of this case were in any way tainted by a predisposition in favor of the Agency. Accordingly, the court affirms the AJ's denial of Petitioner's motion to disqualify him.

### V. *Conclusion*

With the foregoing standard of review in mind, we have evaluated all the arguments set forth in the briefs, the exhibits constituting the record before the Board, and the Board's opinion. We hold that the decision of the Board was supported by substantial and competent evidence and was not arbitrary or capricious, or an abuse of discretion.

*Ergo*, we *affirm* the Board in all respects.

AFFIRMED.