FISKARS, INC. and Fiskars Oy AB, Plaintiffs–Appellees,

v.

HUNT MANUFACTURING CO., Defendant–Appellant,

and

Joseph F. Posillico, Sanctioned Party–Appellant.

Nos. 98–1560, 98–1566.

United States Court of Appeals, Federal Circuit.

July 24, 2000.

Rehearing and Rehearing En Banc Denied Oct. 10, 2000.

David J. Harth, Foley & Lardner, of Madison, Wisconsin, argued for plaintiffs-

appellees. With him on the brief were Joan L. Eads, Anat Hakim, and Nancy Y.T. Hanewicz. Of counsel was Jefferson Perkins.

Joseph F. Posillico, Synnestvedt & Lechner, LLP, of Philadelphia, Pennsylvania, argued for defendant-appellant and sanctioned party-appellant. With him on the brief were Mark D. Simpson, and Gary A. Hecht.

Before NEWMAN, RADER, and SCHALL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Hunt Manufacturing Co. (Hunt) appeals the judgment of the United States District Court for the Western District of Wisconsin,[1] entered upon a jury verdict of infringement, under the doctrine of equivalents, of United States Patent No. 5,322,-001 (the '001 or Fiskars patent) entitled "Paper Cutter with Circular Blades," owned by Fiskars Oy AB and Fiskars, Inc. (together "Fiskars"). Hunt also appeals the district court's determination that there was not inequitable conduct in the United States Patent and Trademark Office. Hunt and its counsel Joseph F. Posillico appeal the ruling that Mr. Posillico had vexatiously and unreasonably multiplied the proceedings on the issue of inequitable conduct, thereby incurring liability for Fiskars' litigation costs on that issue.

The judgment is affirmed.

## BACKGROUND

The '001 patent is directed to a circular-blade paper cutter, illustrated in patent Figure 1:

**1.** *Fiskars, Inc. v. Hunt Mfg. Co.*, No. 97–C– 0255–C (W.D.Wis. Aug. 4, 1998).

FIG. 1

In contrast with guillotine-type paper cutters which employ a long blade that pivots at one end, the patented cutter has a circular blade 18 enclosed in a carriage assembly 16 that rides along a rail 14. The rail is secured to the cutting board at both ends by pivots 27 which allow the rail to be raised for insertion of the paper. The blade assembly is biased upwardly by springs 48, as seen in the detailed drawings of the carriage assembly in patent Figures 5 and 6:

FIG. 5

FIG. 6

To cut the paper the carriage assembly enclosing the blade is pressed down and drawn along the rail. When the pressure is released the biasing springs return the carriage assembly and blade to an inoperative position, preventing accidental cuts of paper or operator.

Claims 1 and 8 are representative, with paragraphing and emphases added to show the terms at issue with respect to infringement under the doctrine of equivalents:

1. A cutting board assembly for cutting or trimming paper sheets, said assembly comprising

[a] a cutting board,

[b] a pair of posts mounted on said cutting board,

[c] a rail assembly pivotally mounted on said posts in a parallel relation to said cutting board,

[d] a carriage assembly mounted on said rail assembly for movement across the cutting board,

[e] a circular cutting blade mounted for rotary motion *in said carriage assembly,*

[f] means for biasing said carriage assembly to an inoperative position on said rail assembly, said biasing means comprises *a pair of leaf springs mounted on said carriage assembly for biasing said carriage assembly* to an inoperative position on said rail assembly

[g] whereby said carriage assembly must be moved from said inoperative position to an operative position on the rail assembly for cutting or trimming the paper sheets.

8. Apparatus for cutting sheet material comprising:

[a] a cutter board,

[b] a pair of pivot blocks mounted in a spaced relation on said cutter board,

[c] a rail assembly pivotally mounted on said pivot blocks for movement between operative and inoperative positions with respect to said board,

[d] a carriage assembly mounted on said rail assembly for translational movement across the board,

[e] said *carriage assembly including a rotary cutting blade,* and

[f] *a spring assembly formed on said carriage assembly* for biasing said carriage assembly to an inoperative position on said rail assembly

[g] whereby said cutting blade is activated by pressing said carriage assembly down and sliding said carriage assembly across said rail assembly.

The accused Hunt paper cutter, called the Heavy Duty Rotary 12 Paper Trimmer, differs in two ways from the Fiskars device that is described and claimed in the '001 patent. First, with respect to clause [e] of claims 1 and 8, in the Fiskars device the blade is mounted in the carriage assembly and the entire carriage assembly is biased by a spring, whereas the Hunt circular blade is mounted in a sub-assembly that is biased by a spring within the carriage assembly. Second, clause [f] of claim 1 specifies a pair of leaf springs, and clause [f] of claim 8 does not specify the kind of spring but states that the spring assembly is "formed on" the carriage assembly; the Hunt device uses a freestanding coil spring.

Upon Fiskars' suit for patent infringement Hunt raised the defenses of noninfringement, patent invalidity, and unenforceability for inequitable conduct. The district court granted partial summary judgment that Hunt did not literally infringe the '001 patent; that ruling is not appealed. Hunt abandoned the defense of patent invalidity at the start of trial. The issue of infringement under the doctrine of equivalents was tried to a jury. The issue of inequitable conduct was tried to the court.

## I

## INFRINGEMENT

### A. *Prosecution History Estoppel*

■ The district court determined before trial that prosecution history estoppel did not preclude Fiskars from asserting infringement under the doctrine of equivalents. Hunt states that the court erred in its rulings concerning estoppel.

#### 1. *The Carriage Assembly*

Hunt argues that Fiskars is estopped from asserting equivalency between the biased carriage assembly of the claims and the biased sub-assembly of the Hunt device because during prosecution Fiskars amended the term "cutting blade" to "carriage assembly." Fiskars argues that any presumption that the amendment was made for reasons of patentability was rebutted by evidence that this amendment was not made to overcome any cited reference: the inventor explained that this amendment was made to remove the unintended limitation of the claims to a cutting blade, for other blades such as perforating

and scoring blades could also be used without change in the device.

Hunt also relies on United States Patents No. 5,069,097 to Mori and No. 3,301,-117 to Spaulding, both of which are directed to paper cutters. The examiner had cited Mori for its showing of a cutting assembly using a circular blade but lacking a means of biasing the cutting blade to an inoperative position, and Spaulding for its showing of a cutting assembly with means for biasing non-circular blades to an inoperative position on a rail. The district court discussed these patents, and their role in the patentability of the Fiskars patent, in extensive detail. The court observed that Mori shows a circular cutting blade that is biased downward toward the paper to be cut, but does not show biasing the blade and carriage upward to an inoperative position as in the Fiskars patent; the court found that the Mori cutting blade is biased in the opposite direction for a different purpose. Concerning Spaulding, the district court observed that Spaulding shows two non-circular blades protruding from the bottom of a carriage that rides on a rail that is upwardly biased by springs. In Spaulding downward pressure moves the rail and carriage assembly into contact with the paper, but when the cutter is not in use the blades protrude below the rail. By contrast, in the Fiskars device the carriage and blade, but not the rail, move to bring the blade into contact with the paper, such that when the cutter is not in use the blade does not protrude below the rail because both the carriage and the blade are biased upwardly.

The district court found that the amendment substituting "carriage assembly" for "cutting blade" was not directed to distinguishing the claims from the cited references, and thus that the amendment was not made for reasons of patentability. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 33, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d 1865, 1873 (1997) (the presumption that an amendment was made for reasons of patentability is "subject to rebuttal if an appropriate reason for a required amendment is estab-

lished.") We discern no reversible error in the district court's conclusion. Thus the question of equivalency between these elements, the claimed biased assembly and the Hunt biased sub-assembly, was properly presented for jury determination.

### 2. *The Biasing Spring*

The Fiskars patent variously claims the biasing spring as "a pair of leaf springs" (claim 1), "a pair of spring blades" (claim 6), and "a spring assembly formed on the carriage assembly" (claim 8). The district court held that the prosecution history did not establish an estoppel against equivalency between the claimed biasing pair of leaf springs and the Hunt biasing coil spring, and presented the question of equivalency to the jury.

Hunt argues that all of the claims should be interpreted as limited to springs that are located "in the rail," and that any broader interpretation is estopped by the prosecution history. Only claim 10 states that the spring is located in the rail; claim 10 was not asserted against Hunt. Although no asserted claim requires that the spring is located in the rail, Hunt argues that this feature was emphasized during prosecution in order to distinguish the Spaulding and Mori references, and that the applicant deceived the examiner into thinking that all of the claims had been amended to include the limitation that appears in claim 10. The district court did not accept Hunt's position. We agree that estoppel did not arise from this assertion of deception of the examiner, for the prosecution record clearly stated which claims were amended to add the limitation that the spring is in the rail, and the examiner thereafter allowed the claims. "[T]here is a presumption that public officers perform their duties correctly, fairly, in good faith, and in accordance with the law and governing regulations...." *Haley v. Department of the Treasury*, 977 F.2d 553, 558 (Fed.Cir.1992) (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926)).

The claims in suit were not amended to add the limitation of the spring in the rail. The district court correctly ruled that the claims in suit are not limited to a device wherein the spring is located in the rail, and that there is no estoppel against equivalency based on the location of the spring.

Hunt also argues that any infringing spring must perform the dual roles of biasing and supporting the blade assembly. Hunt cites Fiskars' argument during prosecution that the spring not only biases the blade but also supports the carriage on the rail, and states that the Hunt coil spring does not provide support for the carriage sub-assembly. Fiskars' expert testified that a spring that biases something in an upward direction necessarily supports it.

Fiskars points out that the only asserted claim that was amended to include a supporting as well as a biasing function was claim 6, and that claim 6 is the only asserted claim in which the support function was mentioned in prosecution argument. Although claim 6 may be subject to prosecution history estoppel as to this element, the other claims in suit are not. Claims whose allowance was not due to a particular argument are not subject to estoppel deriving from that argument. We agree with the district court that there was no estoppel barring the jury question of equivalency of the biasing springs.

### B. The Prior Art

Hunt argues that the burden of proof was misplaced as to whether a hypothetical claim covering the range of equivalents Fiskars was asserting would ensnare the prior art. Hunt does not argue that a hypothetical claim embracing its device would not be patentable; Hunt simply argues that Fiskars had the burden of presenting evidence and establishing that Hunt's device was not in the prior art, as part of its proof of infringement. Hunt states that the district court misplaced the burden of proof, thus requiring a new trial.

■ Hunt's theory is incorrect. It is an affirmative defense of the accused infringer to allege and to show that it is practicing the prior art. When the patentee has presented a *prima facie* case of infringement, the burden shifts to the accused infringer to come forward with evidence to establish this defense. *See National Presto Indus., Inc. v. West Bend Co.,* 76 F.3d 1185, 1192, 37 USPQ2d 1685, 1689 (Fed. Cir.1996) ("When the patentee has made a prima facie case of infringement under the doctrine of equivalents, the burden of coming forward with evidence to show that the accused device is in the prior art is upon the accused infringer.") The patentee is not required to negate an affirmative defense that has not been pled and supported with evidence.

Hunt did not allege that its device is in the prior art, or that a hypothetical claim covering its device would be unpatentable. *See Wilson Sporting Goods Co. v. David Geoffrey & Associates,* 904 F.2d 677, 685, 14 USPQ2d 1942, 1949 (Fed.Cir.1990) (determining patentability of a hypothetical claim covering the accused device). Absent any evidence proffered by Hunt to show that its device was in the prior art, there was nothing for Fiskars to rebut.

### C. The Jury Verdicts

The question of infringement under the doctrine of equivalents was tried to a jury. For each claimed element for which equivalency was asserted, witnesses addressed the similarities and differences as to the substituted element, including the function, way, and result of each element. After three days of trial the jury found infringement of claims 1, 5, 6, and 8, and noninfringement of claims 2 and 9. On posttrial motions the district court upheld the verdicts, ruling that the jury's findings were supported by substantial evidence, and that a new trial was not warranted.

■ The jury's verdicts must be sustained if they are supported by substantial evidence upon the entirety of the record. *See National Presto,* 76 F.3d at 1190, 37 USPQ2d at 1687 (reviewing the trial proceedings "to ascertain whether there was substantial evidence whereby a reasonable

jury could have reached the verdict that was reached"). Hunt argues that no reasonable jury could have found infringement by equivalency, pointing particularly to the differences between coil and leaf springs and arguing that these springs are not interchangeable as they are embodied in the accused and patented devices.

Interchangeability is indeed relevant to equivalency, and the subject of the springs and their function, the way the function was performed, and the result, were the subject of testimony and conflicting views at trial. We agree with the district court that a reasonable jury could have accepted the evidence presented by Fiskars that the Hunt device's coil spring performed substantially the same biasing and supporting function in substantially the same way, with substantially the same result, compared with the leaf springs of the Fiskars device. The evidence of equivalency between the biased assembly and the biased sub-assembly was also substantial, and sufficient to support the verdict.

■■■ Hunt complains that the district court did not permit Hunt to present evidence to the jury of the separate patentability of its device. Since it is well established that separate patentability does not avoid equivalency as a matter of law, *see Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1580, 224 USPQ 409, 417 (Fed.Cir.1984) ("where defendant has appropriated the material features of the patent in suit, infringement will be found 'even when those features have been supplemented and modified to such an extent that the defendant may be entitled to a patent for the improvement.' "), we do not intrude upon the trial court's evidentiary ruling, *see Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1547, 31 USPQ2d 1746, 1750 (Fed.Cir.1994) (" 'The decision to admit or exclude evidence is within the sound discretion of the trial court and will be reversed on appeal only for a clear abuse of that discretion.' ") (quoting *Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 13 F.3d 920, 928 (6th Cir.1993)); *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1018

(7th Cir.2000) ("When reviewing the district court's evidentiary decisions, we employ an abuse of discretion standard and consequently give great deference to the trial court.") The admission or exclusion of evidence not material to the issue of infringement is consigned to the discretion of the trial judge.

■■ Hunt also states that if any individual element of the Hunt device is in the prior art, that element can not be deemed equivalent to any claimed element. That theory is incorrect. A claim to a mechanical device usually recites a combination of several elements, most or all of which may be separately known. *See Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1546, 221 USPQ 1, 7 (Fed.Cir. 1984) ("a combination may be patentable whether it be composed of elements all new, partly new, or all old"); *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1556 n. 3, 225 USPQ 26, 31 n. 3 (Fed.Cir. 1985) ("Only God works from nothing. Men must work with old elements."). That an element of an accused device already existed does not bar equivalency as to that element. *See Warner–Jenkinson*, 520 U.S. at 25, 117 S.Ct. 1040, 41 USPQ2d at 1869 (known interchangeability of elements is evidence of equivalency) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, 85 USPQ 328 (1950)).

The verdicts of infringement under the doctrine of equivalents were supported by substantial evidence and were in accordance with law, and the judgment entered thereon must be affirmed.

### D. Damages

The jury awarded damages to Fiskars in the amounts of $114,760 for lost profits, $1,127,650 for past price erosion, and $1,856,552 for future price erosion. Hunt appeals the award as "speculative and contradictory."

On the issue of lost profits, Hunt does not appeal the calculation thereof. In-

stead, Hunt argued at trial, and again on appeal, that Fiskars would not have made the sales that Hunt made, and therefore is not entitled to damages based on those sales. Hunt stressed that ninety percent of its sales were made to the Staples chain of office supply stores, and argued that Staples prefers to deal with a single supplier who would provide a full line of paper cutters, linear as well as rotary, and that since Fiskars did not make a full line of paper cutters, Fiskars would not have made any sales of rotary paper cutters to Staples.

The evidence at trial was that no single supplier would have been able to provide a full line of paper cutters without infringing the Fiskars patent, for no non-infringing substitute was commercially available for Fiskars' rotary cutter. The district court, reviewing the evidence on post-trial motions, concluded that a reasonable jury could have found that Hunt's customer Staples would have purchased its supply of rotary cutters from Fiskars but for Hunt's infringement. We agree that there was substantial evidence supporting the verdict on this issue.

■ Hunt also challenges the damages verdicts based on price erosion. Evidence on this issue was presented by financial and marketing officers and accounting witnesses for both sides. Fiskars' damages expert testified as to the effect of Hunt's past infringement on Fiskars' prices, and the effect of this price erosion projected into the future. The witness applied the factors set forth in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 197 USPQ 726 (6th Cir.1978) and adopted by the Federal Circuit, *see, e.g., Rite–Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1545, 35 USPQ2d 1065, 1069 (Fed.Cir.1995) (*en banc* ).

Hunt argues that Fiskars' damages expert failed to take into account that Fiskars would have experienced fewer sales had it not reduced its prices in the face of Hunt's competing (infringing) device. Hunt also disputes the testimony that Fiskars' sales of rotary cutters would have

grown at the rate of 10% in an industry that was growing overall at 1%. A witness from Fiskars' Marketing Department testified that Fiskars had experienced this growth rate in the sales of its rotary cutters and estimated the future growth rate, and testified concerning the price reductions Fiskars had been obliged to make in response to Hunt's infringing sales. Another Fiskars witness testified concerning the difficulty Fiskars would encounter in attempting to reestablish its former prices after having reduced its prices in response to Hunt's infringing sales, and explained that Hunt's undercutting prices would lead to continuing price erosion, even after infringement had ceased. Hunt's witnesses disputed the conclusions of Fiskars' witnesses and presented contrary opinions.

On these conflicting positions and arguments, there was substantial evidence whereby a reasonable jury could have reached the damages verdicts here reached. *See Brooktree Corp. v. Advanced Micro Devices, Inc.,* 977 F.2d 1555, 1579–80, 24 USPQ2d 1401, 1418–19 (Fed.Cir. 1992) (the jury award of damages is upheld unless it is " 'grossly excessive or monstrous', clearly not supported by the evidence, or based only on speculation or guesswork") (quoting *Los Angeles Memorial Coliseum Comm'n v. National Football League,* 791 F.2d 1356, 1360 (9th Cir. 1986)); *Smith v. Rowe,* 761 F.2d 360, 368 (7th Cir.1985) ("Damages assessed by a jury are largely discretionary with it. . . . To reverse the judgment of the trial court, the appellate court must conclude that the verdict was so 'gross' or 'monstrously excessive' that the trial court abused its discretion in permitting it to stand.") (quoting *Galard v. Johnson,* 504 F.2d 1198, 1200 (7th Cir.1974)).

■ Hunt also argues that the district court erred in refusing to strike Fiskars' entire damages case because Fiskars did not disclose early enough in the discovery process that it had made some sales to national chains such as Staples. The district court commented in its post-trial

memorandum that it had offered to exclude this evidence from the damages trial, but that Hunt had declined the offer since the evidence was useful to Hunt by diminishing the significance of Hunt's infringing sales. The district court held that Hunt can not, on post trial motion, attack an evidentiary ruling that it requested, having been offered and rejected the ruling it now demands. The district court's actions were within its discretion, and are sustained.

### E. Other Challenged Rulings

Hunt argues that the district court erred in limiting Hunt's presentation at trial to the references that Hunt filed in accordance with 35 U.S.C. § 282 and the court's pre-trial rules and orders. The district court, denying Hunt's motion for a new trial on this ground, referred to Hunt's multiple flouting of the court's "deadlines for the completion of discovery, for the filing of expert reports, for the filing of dispositive motions and for disclosure of lay witnesses." The district court's orders concerning scheduling and expert reports were reasonable trial management, and will not be disturbed. *See Abbott Labs. v. Brennan*, 952 F.2d 1346, 1351, 21 USPQ2d 1192, 1196 (Fed.Cir.1991) ("It is improper on appeal to disturb a district court's trial management, absent a clear abuse of judicial discretion."); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1114, 40 USPQ2d 1611, 1614 (Fed.Cir.1996) (same). We take note that despite these infractions the court granted Hunt a three-week continuance when, on the Thursday before trial, Hunt announced a newly discovered reference. This reference was then translated and admitted into evidence.

Hunt complains of other rulings, and argues that the district court "tramples on Hunt's due process rights." This argument is belied by the record. We discern no abuse of discretion in the district court's evidentiary rulings.

## II

## INEQUITABLE CONDUCT

Hunt raised the defense that the '001 patent is unenforceable due to inequitable conduct by Fiskars during prosecution in the Patent and Trademark Office.

■ A ruling of inequitable conduct in patent prosecution requires the threshold findings that the applicant withheld material information from the PTO during examination of the patent or submitted material false information, and that the applicant acted with the intent to deceive or mislead the examiner into granting the patent. These findings must be made by clear and convincing evidence. *See Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988) (*en banc*). When both materiality and intent have been established, these facts are weighed to determine the ultimate question of inequitable conduct.

■ This issue was tried to the court as to the findings of underlying facts of materiality and intent, as well as the ultimate question of whether these facts constituted inequitable conduct. This procedure is within the district court's discretion, as explained in *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1114, 40 USPQ2d 1611, 1614 (Fed.Cir.1996), and on appellate review the district court's factual findings are reviewed for clear error while the ruling on the ultimate question is reviewed on the standard of abuse of discretion. *See Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 541, 16 USPQ2d 1622, 1624 (Fed.Cir.1990); *Kingsdown*, 863 F.2d at 876, 9 USPQ2d at 1392.

### A

■ Hunt states that four material items were withheld from the PTO with the intent to deceive or mislead the examiner. The four items were three prior art paper cutters and a patent to Benavidez.

Hunt concentrated its argument on a paper cutter called the "Maruzen device," which the inventor had seen at a trade show. The inventor testified that he considered this device to be the closest prior art.

The prosecution history shows a brochure describing the Maruzen paper cutter listed on PTO Form 1449 ("List of References Cited by Applicant(s)") and submitted to the PTO. Although Hunt does not dispute that the Maruzen brochure was submitted to the PTO, Hunt argues that the examiner did not consider it, pointing to the line drawn through this listing on Form 1449. *See Man. Pat. Exam. P.* 609 (7th ed.1998) (directing an examiner to line through a reference that is not being considered)[2]. Hunt states that this placed on Fiskars the obligation to stress to the examiner the relevance of the Maruzen device. However, the earlier PTO requirement that the applicant explain the relevance of the references listed was removed in 1992. Hunt makes no argument that Fiskars otherwise wrongly withheld the brochure.

■ The district court held that when a reference was cited to the patent examiner it can not be deemed to have been withheld, citing *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 18 USPQ2d 1001 (Fed.Cir.1991). In *Scripps* the court held that inequitable conduct could not be based on an applicant's failure to cite a prior art reference, when the examiner independently cited the same reference. Hunt argues that the district court misread *Scripps;* we do not share Hunt's view. An applicant can not be guilty of inequitable conduct if the reference was cited to the examiner, whether or not it was a ground of rejection by the examiner. We do not know the examiner's reason for lining out the three cutters, but Fiskars' citation as prior art defeats

Hunt's charge that the Maruzen device was withheld with deceptive intent. An applicant is not required to tell the PTO twice about the same prior art, on pain of loss of the patent for inequitable conduct.

The district court held that Hunt failed to introduce any evidence of withholding of prior art material to patentability. In its brief, Hunt discusses the features of the three cutters that are now asserted to be material to patentability. However, as the court observed, there was no evidence at trial as to how these three references compared in relevance to the thirteen references considered and listed by the examiner. The district court's ruling that Hunt produced no evidence of withholding of material prior art is well supported by the record.

On the issue of intent, Hunt provided no evidence of intentional withholding of material prior art. Hunt cites *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 25 USPQ2d 1561 (Fed.Cir.1993) for its observation that a "smoking gun" is "not always necessary," to establish intent to deceive. However, *Paragon* does not hold that there need be no evidence of culpable intent. In *Paragon* the affiants with "deliberate artfulness" swore that they were "not employed" by Paragon whereas they were owners or paid consultants of Paragon; this evidence was found to establish culpable intent. The court did not hold in *Paragon* that intent could be found without any factual basis. *See, e.g., Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1122 (Fed.Cir.1998) ("Both materiality and culpable intent are essential factual predicates of inequitable conduct, and each must be proved by clear and convincing evidence."); *B.F. Goodrich Co. v. Aircraft Braking Systems Corp.*, 72 F.3d 1577, 1584, 37 USPQ2d 1314, 1319 (Fed.Cir. 1996) ("One alleging inequitable conduct

---

**2.** MPEP 609 directs an examiner to line through, and not consider, a prior art reference when the requirements of 37 C.F.R. § 1.97 or § 1.98 have not been satisfied. Hunt has not argued that Fiskars failed to

satisfy any of these requirements, and the examiner gave no reason for the action. Therefore, we do not address the status of a reference that was submitted to the PTO without satisfying 37 C.F.R. § 1.97 and § 1.98.

must prove the threshold elements of materiality and intent by clear and convincing evidence.")

We affirm the district court's ruling that the facts predicate to inequitable conduct were not established.

## B

 The district court deemed the inequitable conduct claim "so lacking in substance as to constitute a waste of the time and resources of all the participants." The court imposed sanctions on Hunt's counsel for "multiply[ing] the proceedings … unreasonably and vexatiously," 28 U.S.C. § 1927[3], and awarded Fiskars $8,582.50 of the attorney fees it incurred in defending against this charge.

Hunt's counsel argues that the district court abused its discretion in imposing this sanction. He states that he presented a *prima facie* case of inequitable conduct, and that he did not act in bad faith. He argues that the inventor might have supported the charge of inequitable conduct had he been less credible or his testimony different, and that credibility could not be known until the inventor testified at the trial. Even a generous view of the record from Hunt's position does not weaken the district court's observation that neither material withholding nor intent to deceive was supported with evidence sufficient to make a *prima facie* case. An applicant's citation of prior art in accordance with the rules of the PTO precludes a finding of withholding of that prior art with deceptive intent.

The Seventh Circuit makes clear that liability under § 1927 for unreasonable and vexatious prolongation of the proceedings does not require that the actions were taken in bad faith. *See Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226–27 (7th Cir.1984) ("This court has not required an express finding by the district court of subjective bad faith or intent to delay to support an award of fees under section 1927.") In the words of the district court, "[Hunt's] decision to pursue the counterclaim caused [Fiskars] to incur additional expenses, created extensive work for the court and cast a cloud over the integrity of the inventor and his original counsel."[4]

 In matters of trial management and attorney discipline, marked deference is owed to the discretionary rulings of the judge conducting the trial. *Abbott Labs. v. Brennan*, 952 F.2d 1346, 1351, 21 USPQ2d 1192, 1196 (Fed.Cir.1991) ("It is improper on appeal to disturb a district court's trial management, absent a clear abuse of judicial discretion.") Absent a clear abuse of the trial judge's discretion, it is inappropriate for the appellate court to disturb a disciplinary action that is based on litigation conduct. Such abuse of discretion has not been shown. The sanction is affirmed.

*AFFIRMED*

---

**3.** 28 U.S.C. § 1927. Counsel's liability for excessive costs

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

**4.** The patent attorney who prosecuted the '001 patent was retired, had undergone surgery for cancer, and was suffering significant cognitive difficulties. As the district court observed from his deposition testimony, he could no longer remember any detail about his work on the application for the '001 patent, including "whether he ever met personally with Boda [the inventor]."